Williams, J.
The validity of the lien asserted by the Ship Building Company is contested upon various grounds, one of which is, that it was not perfected in time. That is the only one we deem it necessary to consider, in disposing of the case. By the provisions of our statute in force when the engine was furnished and the affidavit for the lien was filed, a person who performs labor, or furnishes machinery or material, for constructing a mill or manufactory, by virtue of a contract with the owner, is entitled to have a lien to secure payment for the same, upon the building, and the *326 material or machinery so furnished, and upon the interest of the owner in the lot or land on which the building then stands, or to which it may be removed. In order to obtain such lien, the person performing the labor, or furnishing the machinery or material, is required, within.'four months from the time it is performed, or furnished, to file with the recorder of the county where it is performed, or furnished, an affidavit, containing an itemized statement of the amount and value of such labor, machinery or material, a copy of the contract, if it is in writing, a statement of the amount to be paid thereunder, and the times when the payments are to be made, and a description of the land on which the building stands. Revised Statutes, Sections 3184, 3185. As the lien has no existence except by force of the statute, it is essential to its validity that it be taken and perfected within the time allowed by the statute; that is, that the affidavit required, be filed within four months from the time the labor is performed, or the machinery or material is furnished. The affidavit of the defendant in error, for the lien it claims, was filed with the recorder of the county where the property is situated, on the 13th day of August, 1887. It contains a statement of the account of the defendant in error against The Standard Nail & Iron Company, which consists of a single item, bearing the date of April 14, 1887, for “building and setting up one vertical direct blowing engine, as per contract, made December 17, 1886, with Cuyahoga Steam Furnace Company, $8,900.00.” There is a credit of $2,000, of the date of December 27, 1886, and one of $2,460, dated March 5, 1887, leaving a balance due of $4,450. The affidavit also states that the labor was performed and machinery furnished “under and by virtue of a written contract between the said The Cuyahoga Steam Furnace Company and the said The Standard Nail & Iron Company, dated December 17, 1886, and afterward, on the 9th day of March, 1887, assigned and transferred to the said The Cleveland Ship Building Company.” A copy of the contract, and of the assignment, are attached to the affidavit. The contract, which consists of a proposition in writing, made by the Furnace Company to *327 The Nail & Iron Company, and its acceptance by the latter company, is as follows:
“Cleveland, Ohio, Dec. 17, 1886.
“Standard Nail & Iron Co., Middleport, Ohio:
“ Gentlemen : This company will build and furnish you one vertical direct-acting blowing engine, having steam cylinder 38 inches bore, 54 inches stroke, on heavy bed plate and columns being of the general style of the engine built by us for the Roane Iron Co., F. O. B. cars in Cleveland, for the sum of eighty-nine hundred dollars ($8,900.-00), payments to be made as follows: Two thousand dollars ($2,000.00) cash, twenty-four hundred and fifty dollars ($2,450.00) on shipment of engine and forty-four hundred and fifty dollars ($4,450.00) four months from shipment, with interest at six per cent. Engine to be delivered on or before February 15, 1887.
“Cuyahoga Steam Furnace Co.,

“By J. F. Halloway, Prest.

“Accepted: Standard Nail & Iron Co.

“By Chas. H. Greene, Prestí

The assignment of the contract to the defendant in error is endorsed upon it, and is in the following language:
“In pursuance of the terms of written contract this day executed between this company and The Cleveland Ship Building Company, the within contract is hereby assigned to said company, it assuming all our obligations therein.
“Cuyahoga Steam Furnace Co.,
March 9,1887. By J. F. Holloway, Prestí
The engine was delivered on board the cars at Cleveland, ready for shipment, and actually shipped to the purchaser, according to its directions, as early as March 5th, 1887; and, it was received by the purchaser at Middleport, not later than March 14, 1887. The evidence shows that the defendant in error sent one of its employes to Middleport, to superintend the work of setting up the engine; and, that work was not finally completed, and the engine tested, until the 13th day of April, 1887.
The question of law which is here presented for decision is, when, under the contract, was the engine furnished, *328 within the meaning of the statute which makes it necessary to the perfecting of the lien that the affidavit therefor shall be filed within four months from the time the machinery or material is furnished? Was it when the engine was delivered on the cars ready for shipment? Or, not until it was set up in the mill of the purchaser? If at the last mentioned time, the affidavit for the lien, which was filed on the 13th day of August, 1887, was within the period allowed by the statute, and the lien is a valid one; but, if at the time first mentioned, the affidavit was filed too late, and no lien was obtained.
In contracts-for the sale and delivery of personal property, the abbreviation “E. O. B.” is frequently employed, and means that the property is to be delivered on board the designated vessel or vehicle of transportation, without expense to the buyer; so that, the obligation of the Furnace Company, and of its assignee, the defendant in error, under the written contract with the Nail & Iron Company, was to construct and deliver free of expense to the latter company, on board the cars at Cleveland, an engine of the kind therein described, and it imposed no other obligation upon either. When that was done, the contract was fully performed on the part of the furnace company, and the defendant in error; the title to the engine at once vested in the purchasing company, which then became bound for the payment of the whole purchase price, as stipulated in the contract. As the only obligation of the defendant in error, or of the company from which it took the contract by assignment, was to “furnish” on board the cars, an engine of the description called for by the contract, when the delivery on the cars was complete, the engine was furnished in compliance with the contract, and within the meaning of the statute. It is contended, however, that there was a verbal understanding, between the selling and purchasing companies, that the former should put the engine in good working order in the latter’s mill, before the latter company was bound to accept or pay for it; and evidence tending to prove such an understanding was given, over - the objection of the plaintiffs in error, on the trial. Such understanding *329 is at variance with the terms of the written contract; and, as all negotiations between the parties prior to, or contemporaneously with the execution of the contract were merged in it, the evidence was inadmissible, unless it tended to prove a subsequent and separate agreement; and, though the plaintiffs in error were not parties to the written contract, they acquired, as the record shows, by purchase at judicial sale, the property against which the lien was being asserted, and we see no reason why they might not, for the protection of their rights, insist upon the proper application of the rules of evidence, and, that the operation of the contract should be in accordance with its terms and legal effect. If the verbal agreement was subsequent to, and independent of the written contract, labor performed under it could not enlarge the time for taking a lien for the engine. We entertain no doubt that when, by the same contract, a person binds himself to furnish machinery for a building, and also to place it in position, he may have a lien both for the machinery furnished and the labor performed, and perfect it by filing the necessary affidavit containing the required statement of the amount and value of both, within four months after the completion of his contract. In such case the furnishing of the machinery is not complete until it is placed in position according to the contract. But, where the contract is only for furnishing machinery, as in this case, and labor is performed in placing it in position, or otherwise in the construction of the building, under a separate agreement, or gratuitously, the lien for the machinery must be taken within the time limited by the statute, after the contract under which it was furnished has been performed. Separate contracts cannot be tacked together so as to extend the time for taking the lien under either. To create a valid lien for what is done under each contract, the necessary affidavit must be filed within the period limited by the statute, after performance of that contract. Nor, can a lien be obtained for labor gratuitously performed; it must, in the language of the statute, be performed “by virtue of a contract with the owner” of the building.
*330 The lien claimed by the defendant in error does not include any item for labor in setting the engine up; and, it .appears, no charge was made for superintending that work. The lien is claimed only for the balance due on the purchase price of the engine, and is based, as appears from the affidavit, solely upon the written contract. That, we think, was fully performed, and the engine furnished under it, when it was delivered on board the cars at Cleveland ready for shipment, which was more than four months before the affidavit for the lien was filed.
The defendant in error, by its own delay, has failed to secure the benefit of the statute authorizing it to acquire the lien, and the court is without authority to enlarge its provisions.

Judgment reversed.